UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DWAYNE REED #487837,

      Plaintiff,

  v.

BRENDA BUCHANAN, et al.,

      Defendants.

_____/

Case No. 2:17-cv-00156

Hon. Robert J. Jonker
Chief U.S. District Judge

## **REPORT AND RECOMMENDATION**

### **Introduction**

  This is a civil rights action brought by state prisoner Dwayne Reed pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the U.S. Constitution. Following the initial review of the complaint, this Court dismissed Defendants Corizon Health, Inc., and the Michigan Department of Corrections, Bureau of Health Care. The Court found that Plaintiff's Eighth Amendment claims against Defendants Nurse Practitioner Brenda Buchanan and Registered Nurse Jennifer Headley survived initial screening by the Court under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c). (ECF No. 11.)

  This Report and Recommendation addresses the following motions:

  (1) a motion for summary judgment filed by Defendant Buchanan (ECF No.

    39), and,

(2)  a motion for summary judgment filed by Defendant Headley. (ECF No. 43.)

Both Defendants assert (1) that Plaintiff did not exhaust his administrative remedies prior to filing this complaint, and (2) that he cannot establish that each Defendant acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  In addition, Defendant Headley asserts that she is entitled to qualified immunity.

The undersigned respectfully recommends that Defendant Buchanan's motion for summary judgment be granted in its entirety.  I also recommend that the Court find (1) that Defendant Headley has not shown that Plaintiff failed to exhaust his administrative remedies with regard to his claim against her, (2) that Plaintiff has failed to allege facts that establish issues of material fact as to his Eighth Amendment claim against Defendant Headley, and (3) that Defendant Headley is entitled to qualified immunity.  Accordingly, I respectfully recommend that this Court grant Defendant Headley's motion for summary judgment in part, and deny it in part.

These recommendations, if adopted by the Court, will result in dismissal of the case.

## Factual allegations

Plaintiff alleges that, while he was confined at the Chippewa Correctional Facility (URF), Defendants Buchanan and Headley violated his Eighth Amendment rights.  Plaintiff asserts that Defendant Buchanan first violated his rights on

December 5, 2016, by refusing to reinstate his medical detail for a wheelchair.[1] Plaintiff allegedly spoke with Defendant Buchanan after Nurse Filion informed Plaintiff that his expired wheelchair medical detail would not be renewed. On December 30, 2016, Plaintiff fell while walking outside the chow hall. Plaintiff alleges that he would not have fallen if he still had a wheelchair.

Plaintiff alleges that Defendant Headley violated his right to appropriate medical care while examining him after the fall. Plaintiff was given Motrin and a hot water bottle. Defendant Headley took the hot water bottle back because she believed he already had one. Plaintiff states that Defendant Headley became angry during the examination and ordered Plaintiff to leave health services without an escort or wheelchair. Plaintiff states that he was dizzy and confused from the fall and Defendant Headley placed him in danger by not appropriately responding to his condition.

Plaintiff alleges that he was taken to the hospital on January 1, 2017, due to chest pains. He received a chest x-ray and EKG and was told by the doctor that he had a bruised chest from the fall. Plaintiff was prescribed Toradol and Robaxin for rib pain and Antivert for dizziness. Plaintiff alleges that he never received any of the prescribed medication.

---

[1] The MDOC uses a "medical detail" to provide temporary medical accommodations such as prosthetics, medical supplies, assistive devices like wheelchairs, treatment, or restrictions on activities, placement, and housing. Longer term accommodations, that will last for more than six months, are provided by a "Special Accommodation Notice." Policy Directive 04.06.160 E.

On January 3, 2017, Defendant Buchanan requested a hip x-ray and issued Plaintiff a medical detail for a wheelchair. On January 7, 2017, Defendant Buchanan informed Plaintiff that he would need hip replacement surgery. Plaintiff alleges that the denial of a wheelchair detail and the delay in receiving medical care after his fall directly caused his need for a hip replacement. On May 1, 2017, Plaintiff had hip replacement surgery.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). But a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, et al., *MOORES FEDERAL PRACTICE* § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.2d at 1056. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different

interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ P, V.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.   The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.   Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).   Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).  When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.   *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).   The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally

defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ T, BB.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id*. at ¶ DD.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.   *Id*. at ¶¶ T, FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id*. at ¶¶ T, FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id*. at ¶ GG.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596.  For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of Policy Directive 03.02.130. *Id.* at ¶ Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

### Plaintiff's Grievance

Plaintiff filed grievance URF 1701-02-12E3 on December 31, 2016, asserting issues that arose on December 30, 2016. (ECF No. 44-3, PageID.337.) Plaintiff's Step I grievance states that he had calmly tried to explain to Defendant Headley his need for a wheelchair. Plaintiff states that, after he fell on December 30, 2016, he was evaluated by Defendant Headley. Plaintiff asserts that due to the fall he was unable to remember simple things like where his cell was located. Plaintiff alleges that Defendant Headley was "combative" and "argumentative." After she agreed to give him a hot water bottle, she took it back because his medical records indicated that he

already had one.   Plaintiff describes Defendant Headley as negligent and unprofessional.  The Step I grievance was denied because Plaintiff was assessed by Defendant Headley and given an appropriate plan of treatment.  (PageID.338.)  The Step I response stated that during the examination Plaintiff was uncooperative and used profanity directed at Defendant Headley.  (*Id*.) Plaintiff filed a Step II appeal alleging that Defendant Headley refused to treat him for dizziness and pain. (PageID.339.)  The Step I response was upheld.  (PageID.340.)  The Step II response was returned to Plaintiff on February 13, 2017.  Plaintiff filed a Step III appeal. (PageID.339.)  In his Step III appeal, Plaintiff named Defendant Buchanan for the first time as "being deliberately indifferent to [his] medical needs."  (*Id*.)  The Step III appeal was rejected as untimely because it was due by February 28, 2017, but not received until March 9, 2017. (PageID.341.)

### The Step III Grievance Rejection

Defendants argue that because Plaintiff's Step III grievance was rejected as untimely, it was not properly exhausted in accordance with MDOC policy.  Plaintiff argues that he followed MDOC policy by timely sending his grievance on February 27, 2017.  Plaintiff asserts that in accordance with the policy directive, grievances are considered filed on the date they are sent.

Plaintiff's Step II response was returned to him on February 13, 2017.  Plaintiff had ten business days to send the response to the Grievance and Appeals Section. Policy Directive 03.02.130 ¶ FF.  February 13, 2017, was a Monday.  Giving Plaintiff the benefit of the doubt and only counting Monday through Friday as business days

(not counting weekend days), it appears that Plaintiff is correct in his assertion that his Step III grievance was due on Monday, February 27, 2017. Defendants have not responded to Plaintiff's argument that he timely submitted his Step III appeal by sending it on February 27, 2017. According, to MDOC policy, "[g]rievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant." Policy Directive 03.02.130 ¶ S. Accepting Plaintiff's allegations regarding the timing of the Step III grievance submission and giving Plaintiff the benefit of only counting business days, Plaintiff timely sent his Step III grievance on February 27, 2017. Therefore, Plaintiff's grievance should be considered properly exhausted with respect to Defendant Headley.

### Defendant Buchanan in the Step III appeal

Plaintiff first named Defendant Buchanan in his Step III appeal. Plaintiff failed to comply with MDOC procedure which requires him to identify each person involved in the issue being grieved at each step of the process. *Reed-Bey*, 603 F.3d at 324. At Step I and Step II, the MDOC responded only to the allegations asserted against Defendant Headley because Plaintiff did not mention Defendant Buchanan. "The MDOC had no reason to address a claim against any other employee." *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146 at *2 (W.D. Mich. Oct. 24, 2013).

Plaintiff failed to provide Defendant Buchanan a fair opportunity to respond to the grievance by naming her in his grievance prior to the Step III appeal. Unlike *Reed-Bay* where no individuals were named in a grievance, Plaintiff specifically named Defendant Headley. The MDOC responded to the grievance by addressing the

11

merit of Plaintiff's allegations concerning Defendant Headley, at least through Step II.

Contrary to Plaintiff's assertions, the MDOC could not have waived any procedural requirement to name all the individuals involved in the issue being grieved because Plaintiff never gave fair notice that any other employee was involved at the time the MDOC considered his factual assertions at Step I and Step II of the process.

Furthermore, Defendant Headley's treatment of Plaintiff was different from Defendant Buchanan's with respect to dates, the role she played, and her recommended treatment. Accordingly, the MDOC's evaluation of the Step I and II grievances asserted against Defendant Headley cannot be applied to Defendant Buchanan. Plaintiff should have listed Defendant Buchanan in his Step I grievance. He failed to do so. It is the opinion of the undersigned that Plaintiff failed to properly exhaust his claim against Defendant Buchanan.

### Eighth Amendment

Plaintiff asserts that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.*  Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

13

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014) (holding that

a detainee who died due to a perforated duodenal ulcer was not denied treatment in deliberate indifference to his objectively serious medical needs, even though prompt medical attention may have saved his life); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006) (stating that a difference of opinion regarding treatment received for exposure to second-hand smoke failed to rise to the level of an Eighth Amendment claim); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004) (stating that the court should not second guess prison doctor's decision declining to provide psychiatric medication to a prisoner who swallowed a razor blade). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### Plaintiff's Medical Care

Defendant Buchanan first examined Plaintiff on November 1, 2016. At that time, Plaintiff had a medical detail for a wheelchair. (Affidavit of Defendant Buchanan, ECF No. 39-2 and ECF No. 41, PageID.237-240.) Buchanan did not discontinue the medical detail for a wheelchair and never informed Plaintiff that she intended to do so. (*Id.*) She added a medical detail for a hot water bottle to help

Plaintiff manage pain.  (*Id.*)  Plaintiff alleges that he did not initially receive a hot water bottle.

On December 5, 2016, Nurse Filion issued a Clinical Progress Note, which states:

> Pt observed . . . in t[he] wt room.  Was doing a [lot] of arm and shoulder wts.  Was observed walking around[d] with[out] difficulty.  Pt was observed doing lifts [with] wts on shoulder and squatting then standing up.  Pt was observed walking in [the] wt room and in the gym without difficulty.  Pt has a wheelchair detail that expired on 11-22-16 MP did not extend it when he was evaluated 11-1-16.  Will have pt's wheelchair returned to health care today.

(PageID.244.)

Plaintiff alleges that he fell on the sidewalk on December 30, 2016.  Defendant Headley states that on that date, she responded to the sidewalk where Plaintiff was sitting.  Plaintiff denied losing consciousness and indicated that he could walk to health services for an assessment with the assistance of his cane. (Affidavit of Defendant Headley, ECF No. 46-1.)  Plaintiff states that a different nurse was present after he fell and that he first saw Defendant Headley in the health services examination room.

Plaintiff reported right-side buttock and back pain with a history of arthritis.  Plaintiff indicated that he used pain medication.  (ECF No. 41, PageID.246-250.)  Plaintiff was able to sit and stand without assistance, he stepped up and down off the scale, and picked up his ID after he had dropped it. (*Id.*)  There was no redness, or deformity noted.  (*Id.*)  Plaintiff's health care records indicated that he had possession of a hot water bottle.  (*Id.*)  Plaintiff denied that he had a hot water bottle.  Plaintiff

was provided with 12 packs of Motrin/Ibuprofin for pain and scheduled for a follow-up appointment. (*Id*.) Defendant Headley stated that Plaintiff was uncooperative throughout the examination and became unmanageable during the discussion of treatment options.  She advised Plaintiff to use caution on the sidewalks, and he got up and left without assistance.  (*Id*.)

On January 3, 2017, Defendant Buchanan ordered an x-ray of Plaintiff's right hip. (PageID.251-254.)  Plaintiff indicated that he was supposed to have surgery and had been seeing a doctor before his incarceration.  (*Id*.)  The January 4, 2017, x-ray revealed avascular necrosis of the femoral head with advanced arthritic changes at the hip joint.  (PageID.256.)  Plaintiff returned to health care on January 5, 2017, complaining of rib pain.  (PageID.258-259.)  Defendant Headley noted that Plaintiff was going up and down the stairs and pushing and pulling with his right arm.  She advised Plaintiff to alternate with over-the-counter (OTC) pain relief, to use a hot water bottle, and to follow the treatment plan.

After Defendant Buchanan reviewed the x-ray on January 10, 2017, she requested an orthopedic consult due to avascular necrosis on the right femoral head. (PageID.260-263.)  The request was approved that day by Dr. Keith Papendick, M.D. (PageID.265.)  On January 13, 2017, Defendant Buchanan explained her diagnosis to Plaintiff, reinstated his medical detail for a wheelchair, added medical details for an attendant to assist him, and ordered that Plaintiff be given no work assignments. (PageID.266-268.)  She further instructed Plaintiff to refrain from walking around the unit or gym but approved riding the bike in the gym or lifting weights while

sitting in his wheelchair.  Naprosyn was ordered for pain and Plaintiff was to be reevaluated by a medical provider.  Plaintiff failed to show-up for his January 24, 2017, medical appointment. (PageID.272-273.)  Plaintiff was examined by health care staff on January 26, 2017.   (PageID.275-276.)   On January 30, 2017, Defendant Buchanan reordered Plaintiff's medical records and scheduled a chart review for February 28, 2017.  Defendant Buchanan had no further involvement in Plaintiff's medical care.  Plaintiff transferred out of URF and received right hip replacement surgery.  (PageID.282, 295-297.)

## Deliberate Indifference Analysis

In the opinion of the undersigned, Plaintiff has failed to show that Defendants Headley or Buchanan violated his Eighth Amendment rights by acting with deliberate indifference to his medical treatment.  The medical records establish that Defendant Headley saw Plaintiff on two occasions.  First, after he fell on December 30, 2016, and again after he complained of rib pain on January 5, 2017.  Defendant Headley examined Plaintiff, assessed his condition, and gave him pain medication. When Plaintiff presented with rib pain, she recommended that Plaintiff take OTC pain medication and follow the treatment plan.  Plaintiff has failed to establish that Defendant Headley was deliberately indifferent to any of his serious medical needs.

As a Nurse Practitioner, Defendant Buchanan had more involvement in Plaintiff's health care.  Contrary to Plaintiff's assertion, the medical records indicate that she was not involved in removing his wheelchair detail.  The records show that Defendant Buchanan examined Plaintiff on several occasions and conducted chart

reviews.  She ordered an x-ray and was involved in the diagnosis that led to his hip surgery.  Plaintiff has failed to establish that Defendant Buchanan acted with deliberate indifference to his serious medical needs.

Plaintiff has failed to allege facts that satisfy the objective component of his Eighth Amendment claim.  There is no dispute that he received treatment for his condition, but Plaintiff has failed to allege facts showing that his treatment was so woefully inadequate as to amount to no treatment at all.  *Mitchell*, 553 F. App'x at 605.  He was treated despite participating in activities – walking and lifting weights – that could indicate the absence of a serious problem.  Medical staff ordered x-rays, diagnosed his condition, and ordered hip replacement surgery to fix his arthritic hip. In addition, Plaintiff has failed to produced "verifying medical evidence" that shows the detrimental effect of any delay in medical treatment. *Napier*, 238 F.3d at 742.

Plaintiff has also failed to allege facts that satisfy the subjective component of his claim, which, as stated above, requires a showing that a defendant was deliberately indifferent to a prisoner's serious medical needs.  Plaintiff received appropriate care during his confinement at URF.  He has failed to allege facts showing that either Defendant Headley or Buchanan refused to provide him with medical care or acted in a manner that caused him harm.  Although, Plaintiff believes that he should have received different treatment from Defendants. Plaintiff's allegations regarding a different course of treatment fail to rise to the level necessary to support a violation of the Eighth Amendment.

### Qualified immunity

Defendant Headley also moves for summary judgment based upon the defense of qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the Court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 231-32. If the Court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The Court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendant Headley is entitled to qualified immunity. For the

reasons explained above, Plaintiff fails to establish that Defendant Headley acted with deliberate indifference to Plaintiff's Eighth Amendment right to medical care. Accordingly, Defendant Headley may be dismissed on the ground of qualified immunity.

## Recommendation

With respect to Defendant Buchanan's motion for summary judgment (ECF No. 39), I respectfully recommend that this Court find (1) that Defendant Buchanan has shown that there are no issues of material fact regarding Plaintiff's failure to exhaust his administrative remedies with respect to Defendant Buchanan, and (2) that Plaintiff has failed to allege facts that establish issues of material fact as to his Eighth Amendment claim against Defendant Buchanan. Accordingly, I respectfully recommend that this Court grant Defendant Buchanan's motion for summary judgment in its entirety.

With respect to Defendant Headley's motion for summary judgment (ECF No. 43), I respectfully recommend that this Court find (1) that Defendant Headley has not shown that Plaintiff failed to exhaust his administrative remedies with regard to his claim against her, (2) that Plaintiff has failed to allege facts that establish issues of material fact as to his Eighth Amendment claim against Defendant Headley, and (3) that Defendant Headley is entitled to qualified immunity. Accordingly, I respectfully recommend that this Court grant Defendant Headley's motion for summary judgment in part, and deny it in part.

These recommendations, if adopted by the Court, will result in dismissal of the case.

Should the Court adopt the report and recommendation in this case, the Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997), *overruled on other grounds in LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).  For the same reasons that the undersigned recommends granting Defendants' motions for summary judgment, the undersigned discerns no good-faith basis for an appeal.  Should the Court adopt the report and recommendation and should Plaintiff appeal this decision, the Court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:  May 1, 2019                            /s/ *Maarten Vermaat*
                                               MAARTEN VERMAAT
                                               U. S. MAGISTRATE JUDGE